# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KHAMPHET VILAVONG, | Case No. 1:19-cv-00607-SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| ANDREW SAUL, Commissioner of Social Security, | |
| Defendant. | (Doc. 1) |

_____/

## I.   INTRODUCTION

On May 6, 2019, Plaintiff Khamphet Vilavong ("Plaintiff") filed a complaint under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 8, 9.)

## II. FACTUAL BACKGROUND

On January 21, 2015, Plaintiff protectively filed an application for DIB payments, alleging he became disabled on January 1, 2012 due to high blood pressure, diabetes, high cholesterol, back pain, leg weakness, stomach infection, dizziness, loss of appetite, and trouble sleeping. (Administrative Record ("AR") 61, 146–49.) Plaintiff was born on December 5, 1954 and was 57 years old as of the alleged onset date. (*See* AR 61.) Plaintiff graduated college in his native country of Laos, has past work experience as a machine repairer, and last worked full-time in approximately 2011. (AR 25.)

### A. Summary of Relevant Medical Evidence

#### 1. Hing Luong, M.D.

On June 6, 2014, Plaintiff established with care with family care physician Hing Luong, M.D., for treatment of diabetes. (AR 312–14.) At the initial appointment, Dr. Luong noted that Plaintiff had type 2 diabetes mellitus "for unknown time" and was not on medication, and prescribed medications for Plaintiff to take. (AR 312–13.) On August 4, 2014, Dr. Luong noted that Plaintiff had "no fatigue" and was "not taking meds as prescribed." (AR 311.) On February 27, 2015, Dr. Luong again noted that Plaintiff was "not taking" his medication and had "no acute distress" related to his diabetes. (AR 310.) On March 2, 2015, Dr. Luong administered blood tests to Plaintiff which showed high blood sugar levels. (AR 373.) On September 15, 2015 and on February 1, 2016, Dr. Luong noted Plaintiff's blood sugar levels were still high. (AR 360, 371.)

#### 2. Maximo Parayno, M.D.

On November 2, 2015, Plaintiff established care with psychiatrist Maximo Parayno, M.D. for treatment of his psychological issues. (AR 409.) Dr. Parayno assessed that Plaintiff had blunted affect, poor memory, poor concentration and attention span, and poor judgment and insight. (AR 409.) Plaintiff reported feeling angry, sleeping poorly, and having recurrent nightmares. (AR 409.) Dr. Parayno noted that Plaintiff did not know his own phone number and routinely misplaces and loses important items like his car keys and identification. (AR 409.) Dr. Parayno prescribed psychotropic medications to manage Plaintiff's condition. (AR 409.) On

December 28, 2015, and February 22, 2016, Dr. Parayno again noted that Plaintiff had blunted affect, poor memory, poor concentration and attention span, and poor judgment and insight. (AR 407–08.) On April 18, 2016, Plaintiff reported that he continued to have insomnia and recurrent nightmares. (AR 406.) Plaintiff saw Dr. Parayno for further appointments on June 27, 2016, August 22, 2016, February 8, 2017, June 5, 2017, July 31, 2017, October 16, 2017, November 27, 2017, and January 8, 2018, all with similar observations that Plaintiff continued to struggle with his insomnia, memory, concentration, judgment, and other psychological issues. (*See* AR 398– 405.)

On August 22, 2016, Dr. Parayno submitted a physical medical source statement and a mental medical source statement on behalf of Plaintiff. (AR 343–49.) Dr. Parayno stated that he saw Plaintiff monthly from November 2015 until the date of the statement. (AR 343.) Dr. Parayno diagnosed Plaintiff with severe, recurrent PTSD and major depressive disorder. (AR 343.) Dr. Parayno described Plaintiff's symptoms as depression, anxiety, poor memory, concentration and attention, poor sleep, recurrent nightmares and "flash backs." (AR 343.) Dr. Parayno opined that Plaintiff's depression, anxiety, and nightmares affect his physical condition. (AR 343.) Dr. Parayno opined that Plaintiff would be off task about 10% of the time, was capable of only low stress work, could lift 10 pounds occasionally, never twist or climb ladders, rarely stoop or crouch, and occasionally climb stairs, sit for 30 minutes, stand for one hour, needs frequent breaks due to chronic fatigue, and would be absent from work two days per month. (AR 344–46.)

As to Dr. Parayno's mental medical source statement, he again diagnosed Plaintiff with severe, recurrent PTSD and major depressive disorder and described Plaintiff's symptoms as depression, anxiety, poor memory, concentration and attention, poor sleep, recurrent nightmares and "flash backs." (AR 348.) Dr. Parayno also opined that Plaintiff would be absent from work about two days per month due to his mental impairments. (AR 349.) Dr. Parayno opined that Plaintiff had limitations that would preclude performance for 15% or more of the day in completing a normal workday and workweek without interruptions from psychologically based symptoms, dealing with normal work stress, and traveling in unfamiliar places, and limitations

that would preclude performance for 10% or more of the day in all other functional areas. (AR 348–49.)

### 3. Roger Wagner, M.D.

On August 30, 2017, Plaintiff underwent a consultative examination with internist Roger Wagner, M.D. (AR 337–41.) Dr. Wagner noted Plaintiff's chief complaints as diabetes mellitus type 2 and low back pain. (AR 337.) Dr. Wagner noted Plaintiff was currently prescribed Metformin, insulin, Apidra, Meclizine, Lovastatin, Aspirin, and Enalopril. (AR 338.) Dr. Wagner opined Plaintiff could stand and walk up to six hours, had no sitting limitation, could carry 50 pounds occasionally, 25 pounds frequently, and 10 pounds continuously, could frequently climb stairs and ramps, stoop and crouch, and could occasionally climb ladders and scaffolds. (AR 340–41.)

### 4. State Agency Physicians

On May 6, 2015, A. Nasrabedi, M.D., a Disability Determinations Service medical consultant, found Plaintiff's physical impairments non severe. (AR 53–59.) Upon reconsideration, on September 20, 2015, another Disability Determinations Service medical consultant, B. Young, M.D., affirmed Dr. Nasrabedi's findings as to Plaintiff's impairments. (AR 61–69.)

## B. Administrative Proceedings

The Commissioner denied Plaintiff's application for benefits initially on May 7, 2015, and again on reconsideration on September 21, 2015. (AR 60, 70–74, 77–81.) On November 19, 2015, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 84–85.)

On February 28, 2018, Plaintiff appeared with counsel and testified before an ALJ as to his alleged disabling conditions, with the assistance of a Laotian interpreter. (AR 32–51.) Plaintiff testified he was unable to work because of low back pain, diabetes, leg weakness, sleeping problems, and forgetfulness. (AR 39–40.) Plaintiff stated that he is on insulin for the diabetes, and he gets dizzy from the diabetes every day. (AR 40–41.) Plaintiff testified that he needs to lay down at least twice a day for an hour each time. (AR 42.) Plaintiff stated that he

goes to see Dr. Parayno for his sleeping problems because he has nightmares and then cannot fall back asleep. (AR 42–43.) Plaintiff stated he is prescribed sleeping pills and pain pills. (AR 44.)

A Vocational Expert ("VE") testified at the hearing that Plaintiff had past work as a machine repairer, Dictionary of Occupational Titles (DOT) code 638.281-014, which was medium to heavy work with a specific vocational preparation (SVP)[2] of 7. (AR 49.) The ALJ asked the VE to consider a person of Plaintiff's age, education, and with his work background. (AR 49.) The VE was also to assume this person was able to lift and carry 25 pounds frequently and 50 pounds occasionally, stand, walk, and sit for 6 hours out of an 8-hour workday, never climb ladders, ropes and scaffolds, must rest every 2 hours for 15 minutes, can perform non-complex, routine tasks in a static work environment, can have occasional contact with the public, occasional tasks that require teamwork, and can have no exposure to work hazards. (AR 49.) The VE testified that such a person not perform Plaintiff's past relevant work, but could perform the job of industrial cleaner, DOT code 381.687-013, which is medium work with a SVP of 2 and 13,700 jobs available; furnace cleaner, DOT code 891.687-014, which is medium work with a SVP of 2 and 91,000 jobs; and automobile detailer, DOT code 915.687-034, which is medium work with a SVP of 2 and 53,000 jobs. (AR 50.)

In a second hypothetical, the ALJ asked the VE to consider an individual with the limitations described in the first hypothetical except that the person had limited understanding of English. (AR 50.) The VE testified that such a person could perform the jobs of industrial cleaner, automobile detailer, and kitchen helper, DOT code 318.687-010, which is medium work with a SVP of 2 and 271,900 jobs available. (AR 50.) In a third hypothetical, the ALJ asked the VE to consider an individual with the limitations described in the first two hypotheticals except that would only be productive six hours of the day because of chronic pain and inability to concentrate. (AR 50.) The VE testified that the person could not perform any work. (AR 51.) Plaintiff's counsel asked the VE a fourth hypothetical, which consisted of an individual with the

---

[2] Specific vocational preparation (SVP), as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id.*

limitations in the third hypothetical but that would also miss work four hours a week. (AR 51.) The VE testified that that person could not perform any work. (AR 51.)

**C.    The ALJ's Decision**

In a decision dated May 25, 2018, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 15–27.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 17–27.) The ALJ decided that Plaintiff had not engaged in substantial gainful activity since January 1, 2012, the alleged onset date (step one). (AR 17.) At step two, the ALJ found that Plaintiff had the following severe impairments: diabetes; depression; and post-traumatic stress disorder ("PTSD"). (AR 17.) The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the Listings (step three). (AR 17.)

The ALJ assessed Plaintiff's RFC and applied the RFC assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity … We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff retained the RFC:

> to perform medium work as defined in 20 CFR 404.1567(c) except lifting and carrying no more than 24 pounds frequently and 50 pounds occasionally; pushing and pulling within those weight limits; standing, and walking and sitting no more than six out of eight hours; no ladders, ropes or scaffolds; the ability to rest every two hours for fifteen minutes falling within the normal breaks and lunch periods; non-complex routine tasks in a static work environment; occasional contact with the public and occasional tasks that would require teamwork; no work hazards, such as working at unprotected heights, operating dangerous or fast machinery, or driving commercial vehicles; and limited English, understanding, and no writing or reading more than very simple words.

(AR 19.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" he rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record[.]" (AR 20–21.) At step five, the ALJ found that Plaintiff could not perform his past relevant work, but there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform.

(AR 25–26.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on March 1, 2019. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

## III.   LEGAL STANDARD

### A.   Applicable Law

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled. *Burch v.*

*Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps."  *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis."  *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).  "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work."  *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of disability insurance benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole."  *Tackett*, 180 F.3d at 1097 (citation omitted).  "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098).  "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review …"  *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted).  Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 (citations omitted) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'"  *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.   DISCUSSION

Plaintiff contends that the ALJ erred (1) in her evaluation of Dr. Parayno's opinion and (2) in relying on VE testimony at step five that Plaintiff could perform jobs which require English literacy at a level beyond Plaintiff's capability. (*See* Doc. 16 at 2.) For the reasons stated below, the Court agrees with Plaintiff that the ALJ erred in her evaluation of Dr. Parayno's opinion regarding Plaintiff's mental functional limitations, and will remand the case on that basis.

**A.   The ALJ Erred in Her Evaluation of Dr. Parayno's Opinion Regarding Plaintiff's Mental Limitations.**

**1.   Legal Standard**

The ALJ must consider and evaluate every medical opinion of record. *See* 20 C.F.R. § 404.1527(b) and (c) (applying to claims filed before March 27, 2017); *Mora v. Berryhill*, No. 1:16–cv–01279–SKO, 2018 WL 636923, at *10 (E.D. Cal. Jan. 31, 2018). In doing so, the ALJ "cannot reject [medical] evidence for no reason or the wrong reason." *Mora*, 2018 WL 636923, at *10.

Cases in this circuit distinguish between three types of medical opinions: (1) those given by a physician who treated the claimant (treating physician); (2) those given by a physician who examined but did not treat the claimant (examining physician); and (3) those given by a physician who neither examined nor treated the claimant (non-examining physician). *Fatheree v. Colvin*, No. 1:13–cv–01577–SKO, 2015 WL 1201669, at *13 (E.D. Cal. Mar. 16, 2015). "Generally, a

treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citations omitted); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) ("By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." (citing 20 C.F.R. § 404.1527)). The opinions of treating physicians "are given greater weight than the opinions of other physicians" because "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (citations omitted).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing *Ryan*, 528 F.3d at 1198); *see also Lester*, 81 F.3d at 830–31. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes*, 881 F.2d at 751). The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir.

2001),³ except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes*, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. *Lester*, 81 F.3d at 831.

### 2. Analysis

Plaintiff alleges—and the record reflects—that Dr. Parayno was Plaintiff's treating psychiatrist. (*See, e.g.,* AR 398–409.) "If . . . a treating [physician's] opinion . . . is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record, [the Commissioner] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2); *cf. Reddick*, 157 F.3d at 725 ("Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons supported by substantial evidence in the record." (citation omitted)). "If there is 'substantial evidence' in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to 'controlling weight.'" *Orn*, 495 F.3d at 632 (quoting 20 C.F.R. § 404.1527(d)(2)).

"If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record, the [Commissioner] considers specified factors in determining the weight it will be given." *Id.* at 631. These factors include (1) the "[l]ength of the treatment relationship and the frequency of examination;" (2) the "[n]ature and extent of the treatment relationship;" (3) the "[s]upportability" of the opinion;" (4) the "[c]onsistency" of the opinion "with the record as a whole;" (5) whether the opinion is from "a specialist about medical issues related to his or her area of specialty;" and (6) "any other factors [the claimant] or others bring to [the ALJ's] attention, or of which [the ALJ is] aware, which tend to support or contradict the opinion." 20 C.F.R. § 404.1527(c)(2)–(6).

---

³ The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

Further, "[e]ven if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick*, 157 F.3d at 725 (quoting *Lester*, 81 F.3d at 830). *See also Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)); *see, e.g.*, *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." (quoting *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009))); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995))); *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992) (noting that "inconsistencies and ambiguities" in a treating physician's opinion "represent specific and legitimate reasons for" rejecting the opinion). "The ALJ must do more than offer his conclusions." *Reddick*, 157 F.3d at 725. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988)).

Dr. Parayno treated Plaintiff at least once a month from approximately November 2015 through at least January 2018. (*See* AR 343–49, 398–409.) As stated above, on August 22, 2016, Dr. Parayno submitted a physical medical source statement and a mental medical source statement on behalf of Plaintiff. (AR 343–49.) In the mental medical source statement, Dr. Parayno opined that Plaintiff's psychological impairments precluded performance for 15% or more of the day in completing a normal workday and workweek without interruptions from psychologically based symptoms, dealing with normal work stress, and traveling in unfamiliar places, and precluded performance for 10% or more of the day in all other functional areas. (AR 348–49.) Dr. Parayno also opined that Plaintiff's mental limitations would cause him to be absent from work two days

per month.  (AR 349.)

In weighing Dr. Parayno's opinion as to Plaintiff's mental limitations, after summarizing Dr. Parayno's findings, (*see* AR 24–25), the ALJ stated:

> It should be noted that parts of the medical source statement were handwritten and illegible; however, his opinion was inconsistent with the record as whole [sic].  For example, during a medical appointment in January 2015, where [Plaintiff] was observed to be oriented to person, place and time, he had a normal mood and affect and his judgment and thought content were both normal.  Therefore, the undersigned gives little weight to the opinion of Dr. Parayno.

(AR 25.)

Although not explicitly stated by the ALJ, portions of Dr. Parayno's opinion were inconsistent with the opinions of the state agency physicians.  (*Compare* AR 398–409 *with* AR 53–59, 61–69.)  Thus, the ALJ was required to state "specific and legitimate" reasons, supported by substantial evidence, for discounting Dr. Parayno's opinion.  *Trevizo*, 871 F.3d at 675 (citing *Ryan*, 528 F.3d at 1198); *see also Lester*, 81 F.3d at 830.

The Court finds the ALJ failed to offer "specific and legitimate" reasons for rejecting Dr. Parayno's opinion.  The ALJ's first offered reason—the alleged illegibility of Dr. Parayno's treatment notes—is insufficient.  As an initial matter, the Court has reviewed Dr. Parayno's treatment notes and most of them are legible, (*see* AR 343–49, 398–409), and they are certainly sufficiently legible for the ALJ to ascertain the medical basis for Dr. Parayno's opinion.  However, even if the treatment notes were illegible, "where a 'physician's documentation is illegible and, therefore, inadequate to allow for proper evaluation of medical evidence, the ambiguity triggers the ALJ's duty to develop the record." *Latrice M. v. Commissioner of Social Security*, No. CV 19-5377-KS, 2020 WL 1676380, at *11 (C.D. Cal. Apr. 6, 2020) (citing *Burch*, 400 F.3d at 679; *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)).  Thus, if the ALJ believed Dr. Parayno's treatment notes were too illegible to decipher, she had a duty to "recontact the treating physician to determine the basis of his opinion." *Mansour v. Astrue*, No. ED CV 07-851-PLA,

2009 WL 272865, at *7 (C.D. Cal. Feb. 2, 2009) (citation omitted). On remand, if the ALJ determines that Dr. Parayno's treatment notes are too illegible to determine the basis of his opinions, she should recontact Dr. Parayno to resolve any remaining questions. *See* 20 C.F.R. § 404.1519a(b)(4).

The ALJ's second reason—that Dr. Parayno's opinion is inconsistent with the medical evidence—is also insufficient. The only specific treatment note the ALJ cited to support discounting Dr. Parayno's opinion was a single notation during a physical examination that Plaintiff appeared "oriented to person, place, and time," and had normal mood and affect. (AR 25) (citing AR 267). However, the ALJ failed to discuss this single treatment note in contrast with the many treatment notes showing that Plaintiff had blunted affect, poor memory, poor concentration and attention span, and poor judgment and insight. (*See, e.g.,* AR 409.)

An ALJ may properly discount a treating physician's opinion that is inconsistent with the medical record, including his own treatment notes. *See Valentine*, 574 F.3d at 692–93. However, an ALJ may not consider only evidence that supports a non-disability determination and disregard evidence that supports a finding of disability. *See, e.g., Holohan*, 246 F.3d at 1207 (finding that "the ALJ's specific reason for rejecting [a physician's] medical opinion [was] not supported by substantial evidence" because, in part, "the ALJ selectively relied on some entries in [the plaintiff's] records . . . and ignored the many others that indicated continued, severe impairment"); *see also Reddick*, 157 F.3d at 722–23 (the ALJ may not "cherry pick" notes from the medical record to support a particular conclusion, but rather must evaluate the entire record in its proper context). Here, the ALJ "cherry pick[ed]" one note in the record, which was entered in the context of an emergency room visit for Plaintiff's physical diabetes symptoms, stating that Plaintiff was oriented to person, place and time, while insufficiently contrasting that single note with the multiple treatment notes stating that Plaintiff was functioning poorly in other areas. *See id.* Thus, without further explanation from the ALJ, the Court cannot find this reason to be a "specific" and

"legitimate" basis to reject Dr. Parayno's opinion.

**B.     The ALJ's Error Was Not Harmless**

The Court now turns to the analysis of whether this error by the ALJ was harmless. The Ninth Circuit "ha[s] long recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)); *see also Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 932 n.10 (9th Cir. 2014) (stating that the harmless error analysis applies where the ALJ errs by not discharging their duty to develop the record). As such, "the court will not reverse an ALJ's decision for harmless error." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citing *Robbins*, 466 F.3d at 885).

An error is harmless "where it is inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (citations omitted); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (stating that an error is also harmless "'if the agency's path may reasonably be discerned,' even if the agency 'explains its decision with less than ideal clarity'" (quoting *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004)). "In other words, in each case [courts] look at the record as a whole to determine whether the error alters the outcome of the case." *Molina*, 674 F.3d at 1115. "[T]he nature of [the] application" of the "harmless error analysis to social security cases" is "fact-intensive—'no presumptions operate' and '[courts] must analyze harmlessness in light of the circumstances of the case.'" *March v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (quoting *Molina*, 674 F.3d at 1121). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki*, 556 U.S. at 409 (citations omitted).

Here, the Commissioner does not contend that any error by the ALJ in evaluating Dr. Parayno's opinion was harmless, and the record establishes that the ALJ's error was not harmless. If the ALJ had properly evaluated Dr. Parayno's opinion and credited any part of it, including appropriate limitations in the RFC, that may have changed the disability determination. This is especially true here, where Dr. Parayno opined significant limitations, including that Plaintiff's mental impairments would result in him being absent from work at least two days per month. (*See*

AR 349.) Thus, the error was not "inconsequential to the ultimate nondisability determination," *see Molina*, 674 F.3d at 1115, and was not harmless.

### C.     The ALJ's Error Warrants Remand for Further Proceedings

Plaintiff requests that if the Court reverses the ALJ's decision, the Court remand the case for further proceedings as opposed to awarding benefits. (Doc. 16 at 20–21.) The Court agrees with Plaintiff that "additional proceedings are necessary in order to properly evaluate Dr. Parayno's medical opinion" and will remand the case to the Commissioner. (*See id.*)

Where the ALJ commits an error and that error is not harmless, the "ordinary … rule" is "to remand to the agency for additional investigation or explanation." *Treichler*, 775 F.3d at 1099 (citations omitted). The Ninth Circuit recognized a limited exception to this typical course where courts "remand[] for an award of benefits instead of further proceedings." *Id.* at 1100–01 (citations omitted); *see also id.* at 1100 (noting that this exception is "sometimes referred to as the 'credit-as-true' rule"). In determining whether to apply this exception to the "ordinary remand rule," the court must determine, in part, whether (1) "the record has been fully developed;" (2) "there are outstanding issues that must be resolved before a determination of disability can be made;" and (3) "further administrative proceedings would be useful." *Id.* at 1101 (citations omitted). As to the last inquiry, additional "[a]dministrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence . . . may well prove enlightening in light of the passage of time." *Id.* (citations omitted). Ultimately, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion." *Swenson*, 876 F.2d at 689 (citation omitted).

Here, the Court finds that the "credit-as-true" exception to the "ordinary remand rule" is inapplicable because additional administrative proceedings would be useful. If the ALJ changes

the evaluation of Dr. Parayno's opinion, the ALJ can incorporate any warranted additional limitations in the RFC. Conversely, there may be specific and legitimate reasons the ALJ can offer for discounting the opinion. *See, e.g., Vaughn v. Berryhill*, 242 F. Supp. 3d 998, 1010 (E.D. Cal. Mar. 17, 2017) (remanding case for further proceedings where the ALJ erred in her evaluation of the medical opinions of plaintiff's treating physicians, "for the ALJ to properly consider and discuss the treating physicians' opinions," direct any "further medical evaluation . . . necessary," and re-formulate plaintiff's RFC). *Cf. Voisard v. Berryhill*, No. 2:17-CV-1023-EFB, 2018 WL 4488474, at *5 (E.D. Cal. Sept. 19, 2018) ("That the ALJ failed to provide sufficient reasons for discounting plaintiff's subjective testimony in this instance does not compel a finding that he is unable to do so.").

Even if the ALJ decides to credit as true some or all of Dr. Parayno's opinion and adjust the RFC determination for Plaintiff, the ALJ may still conclude that Plaintiff is not disabled-- either because he has the RFC to perform the requirements of his past relevant work or because he has the RFC to perform the requirements of other work that exists in significant numbers in the national economy. The ALJ may also elect to further develop the record, if deemed necessary, and should further develop the record if she determines that Dr. Parayno's opinion is illegible and she cannot decipher the bases for his opinions. Further proceedings would therefore be useful to allow the ALJ to resolve this "outstanding issue[]" before a proper disability determination can be made. *See Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988). On remand, the ALJ should reevaluate the opinions of Dr. Parayno, and address any necessary changes to the RFC determination. The ALJ must also reevaluate her conclusions at Steps Four and Five of the disability determination in light of any changes to Plaintiff's RFC, and should evaluate the alleged conflict between Plaintiff's English-speaking capability "as assessed by the ALJ and the language capability required by the jobs proffered by the vocational expert." (*See* Doc. 16 at 21.)

Based on the foregoing, the Court will remand this case for further proceedings.

**D.     The Court Declines to Determine Plaintiff's Remaining Assertions of Error**

As the Court finds that remand is appropriate for the ALJ to reconsider Dr. Parayno's opinion as to Plaintiff's mental limitations, the Court does not determine Plaintiff's additional assertions of error regarding Dr. Parayno's opinion as to Plaintiff's physical limitations and the alleged inconsistency between the ALJ's finding regarding Plaintiff's English-speaking capability and the jobs offered by the VE.  (*See* Doc. 16 at 16–21); *cf. Newton v. Colvin*, No. 2:13-cv-2458-GEB-EFB, 2015 WL 1136477, at *6 n.4 (E.D. Cal. Mar. 12, 2015) ("As the matter must be remanded for further consideration of the medical evidence, the court declines to address plaintiff's remaining arguments"); *Willmett ex rel. A.P. v. Astrue*, No. 2:10-cv-01201 KJN, 2011 WL 3816284, at *1 (E.D. Cal. Aug. 25, 2011) ("Because this legal error warrants remanding this matter for further proceedings, the undersigned does not reach the remainder of [the] plaintiff's arguments seeking reversal of the ALJ's and Appeals Council's decisions.").

## V.     CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Khamphet Vilavong and against Defendant Andrew Saul, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **August 20, 2020**                               /s/ *Sheila K. Oberto*                 .
                                                                                UNITED STATES MAGISTRATE JUDGE